# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Christine A. Tate,               :

                                :

             Plaintiff,        :     Civil Action No.:  02-2216 (RMU)

                                :     Document No.:   71

             v.              :

                                :

District of Columbia,        :

                                :

             Defendant.     :

## MEMORANDUM OPINION
### Granting the Defendant's Motion for Summary Judgment

## I.  INTRODUCTION

In this civil action brought *pro se*, the plaintiff sues the District of Columbia for alleged constitutional violations and common law torts resulting from the impoundment and sale of her car.  The District of Columbia moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure [Dkt. No. 71].  Upon consideration of the parties' submissions and the entire record, the court will grant the defendant's motion for summary judgment.

## II.  BACKGROUND

The plaintiff owned a 1998 Volkswagen Beetle, which she registered  with the District's Department of Motor Vehicles ("DMV") on August 3, 1998.  Def.'s Mot. for Summ. J., Ex. A ("Claytor Decl.")[1] ¶ 5.  The plaintiff was issued a $100 parking ticket on January 10, 2002, and a $50 ticket for failing to properly display her front tag on January 29, 2002.  *Id.* ¶¶ 6-7.  Each fine

---

[1]  Claytor is DMV's Chief Hearing Examiner.  Her declaration, amply supported by exhibits, is based on her "review [of] vehicle registrations, hearing records and ticket summary sheets which contain information on the status of tickets as well as fees assessed to booted and towed vehicles."  Claytor Decl. ¶ 3.

doubled when the plaintiff failed to respond to the respective notices of infraction.  *Id*.  On March 12, 2002, based on at least two unpaid parking tickets, the Department of Public Works ("DPW") placed a boot on the plaintiff's car.  *Id*. ¶ 8.  On March 14, 2002, the plaintiff appeared before a hearing examiner, who found her liable for the $50 ticket.  *Id*. ¶ 9.  On March 15, 2002, the plaintiff again appeared before a hearing examiner, who found her liable for the $100 parking ticket but waived the penalty based on the plaintiff's "credible" testimony that she was unaware of the ticket.  *Id*. ¶ 10.  The hearing examiner upheld the placing of the boot on the plaintiff's car based on DMV's records showing that the plaintiff had accumulated five unpaid parking tickets.  *Id*. ¶¶ 8, 10.

On March 26, 2002, DPW towed the plaintiff's car to its Addison Road Impound Lot; on April 9, 2002, DPW towed the car to its Abandoned and Junk Vehicle Division's Blue Plains Impound Lot.  *Id*. ¶ 11.  On April 19, 2002, the plaintiff visited the Blue Plains lot and removed a suitcase from her car.  Def.'s Mot. for Summ. J., Ex. 3 ("Jones Decl.")[2] ¶ 9 & Ex. D.  On May 29, 2002, the plaintiff appeared before a hearing examiner for a ticket purportedly issued on November 19, 2001, but the hearing examiner dismissed the ticket "as a warning" because it had not been timely recorded by DMV.  Claytor Decl. ¶ 12.  The examiner nonetheless upheld the fees for the boot, tow and storage based on the plaintiff's "two delinquent tickets remaining."  *Id*. & Ex. J.  On June 4, 2002, the District sold the plaintiff's car and personal effects therein at a public auction for $4,000.  Jones Decl. ¶ 11 & Ex. E.

---

[2]  As Program Manager for DPW, Jones is "responsible for the operation of the Abandoned Vehicle Program, Budget, adherence to Policies, procedures and work processes." Jones Decl. ¶ 3.

The plaintiff claims that the District conducted an unreasonable seizure in violation of the Fourth Amendment, denied her due process and equal protection of the laws in violation of the Fifth Amendment and took her property without just compensation in violation of the Fifth Amendment.  She also accuses the defendant under the common law of conversion, promissory estoppel, negligent misrepresentation, unjust enrichment and intentional and reckless infliction of emotional distress.  Am. Compl. [Dkt. No. 43].

### III.  ANALYSIS

### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position, *id.* at 252, and may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  "The object of [Rule 56(e)] is not to replace conclusory

3

allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990), but to identify a genuine issue of material fact.  The nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.  If the nonmoving party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).  "The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined [] by other credible evidence[.]"  *Johnson v. Washington Metropolitan Area Transit Authority*, 883 F.2d 125, 128 (D.C. Cir. 1989) (citations omitted).

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

### B. The Plaintiff Fails to Establish a Fourth Amendment Violation

The Fourth Amendment protects "against unreasonable . . . seizures."  U.S. Const. amend. IV.  Unreasonableness is determined by the facts and circumstances of the particular case.  *United States v. Proctor*, 489 F.3d 1348, 1352 (D.C. Cir. 2007) (citations omitted).  Under the applicable District of Columbia law, the Metropolitan Police Department, the United States Park Police or an employee of the District of Columbia Department of Transportation could direct the "towing" or removal of "[a]ny unattended motor vehicle found parked at any time upon

4

any public highway of the District of Columbia against which there are 2 or more outstanding or otherwise unsettled traffic violation notices or notices of infraction or against which there have been issued 2 or more warrants[.]"  D.C. Code § 50-2201.03(d)(1) (2001).  Although the plaintiff disputes the defendant's claim that she had five unresolved tickets at the time her car was seized on March 12, 2002, Pl.'s Opp'n at 3, 10, she does not dispute that she had two unresolved parking tickets, *see generally id*.  Under these circumstances, no reasonable jury could find that the District's impoundment of the car was an unreasonable seizure under the Fourth Amendment. *See South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (approving as part of  "community caretaking functions" the government's removal and impounding of cars "which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic") (footnote omitted).

Presumably based on the Fourth Amendment's reasonableness test, the plaintiff seeks a declaration that D.C. Code § 50-2201.03(d)(1) is unconstitutional because it authorized the District to take "actions [that] were extreme and severely disproportionate to the need presented, [*i.e.*,] the collection of fines and penalties for two outstanding parking tickets."  Am. Compl. ¶ 61.  She also seeks a declaration that D.C. Code § 50-2623 is unconstitutional because it "authorized [the District] to sell Plaintiff's car on June 4, 2002 and to retain the proceeds[.]"[3]  *Id.* ¶ 64.  The parking regulations, however, were created out of "public necessity" to address an increasing "serious traffic congestion on the highways of the District" by "the greatly increased use by the public of motor vehicles" and to promote "the free circulation . . . necessary to the

---

[3]   Section 50-2623 authorized the Abandoned and Junk Vehicle Division to sell an abandoned vehicle, defined in relevant part as "any motor vehicle. . . [t]hat has remained unclaimed for 45 days after proper notice."  D.C. Code § 50-2602(6)(E).

health, safety, and general welfare of the public." D.C. Code § 50-2601. The Council specifically found "that the parking of motor vehicles on the highways of the District has contributed to this congestion to such an extent as to interfere seriously with the primary use of such highways for the movement of traffic[.]" *Id*. Because "'[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond [Fourth Amendment] challenge,'" *Proctor*, 489 F.3d at 1353 (quoting *Opperman*, 428 U.S. at 369), the plaintiff has provided no basis for granting a declaratory judgment.

## C.  The Plaintiff's Claim Under the Fifth Amendment's Takings Clause Fails as a Matter of Law

The Constitution prohibits the government from taking "private property . . . for public use, without just compensation." U.S. Const. amend. V. Plaintiff challenges the District's retention of the proceeds from the sale of her car and other property that she claims "far exceeded the value of any outstanding tickets, fees or penalties that Plaintiff owed the District[.]" Am. Compl. ¶ 44. District of Columbia law, however, required the proceeds from the sale of a vehicle to be applied first to "the expenses of the auction and the cost of towing and storing [and any remainder] deposited in the Fund to be used by the Abandoned and Junk Vehicle Division to carry out its duties." D.C. Code § 50-2623. More to the point, "[t]he government [is] not [] required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain," *Bennis v. Michigan*, 516 U.S. 442, 452 (1996) (citations omitted), and "[p]roperty seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause."

6

*AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008).  The defendant is entitled to judgment on this claim.

### D.  The Plaintiff Fails to Establish an Equal Protection Violation

To succeed on a claim that the defendant has violated her Fifth Amendment right to equal protection, the plaintiff must show that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted); accord *Plyler v. Doe*, 457 U.S. 202, 216 (1982) ("[T]he Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike.") (internal quotation marks and citation omitted).[4]  But "some forms of state action . . . by their nature involve [such] discretionary decisionmaking based on a vast array of subjective, individualized assessments" that they simply are not amenable to an equal protection challenge in the absence of a claim based on such suspect classifications as race or gender.  *Engquist v. Or. Dep't of Agric.*, ___ U.S. ___, 128 S. Ct. 2146, 2154 (2008).  For example, "allowing an equal protection claim on the ground that a [speeding] ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action."  *Id*.

The plaintiff baldly claims that she "was singled out for harsh treatment . . . because, among other things, she filed a complaint about the [MPD], wrote letters to District Officials and [] threatened to sue Defendant and pushed for prosecution of crimes that were committed against

---

[4]   Because the Fourteenth Amendment's equal protection clause applies only to laws enacted by state governments, the Supreme Court has found the Fifth Amendment's due process clause to encompass equal protection claims against the District of Columbia.  *Bolling v. Sharpe*, 347 U.S. 497, 498-500 (1954).

her." Pl.'s Opp'n at 18.  Not only does the plaintiff not identify the individuals to whom she

claims to be similarly situated but she does not support her allegations of retaliation with any

evidence or counter the defendant's evidence that the DPW, not the MPD, booted, towed and

sold her car at a regularly scheduled public auction along with more than 100 other vehicles,

Jones Decl. ¶¶ 4-14, pursuant to a rationally based law.  *See* s*upra* at 5-6.  The defendant is

entitled to judgment on the plaintiff's equal protection claim.

### E.  The Plaintiff Fails to Establish a Due Process Violation

"The fundamental requirement of due process is [notice and] the opportunity to be heard

'at a meaningful time and in a meaningful manner,'" before the government deprives an

individual of property.  *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v.*

*Manzo*, 380 U.S. 545, 552 (1965)); *U.S. v. E-Gold, Ltd*, 521 F.3d 411, 415-16 (D.C. Cir. 2008).

"The hearing required by the Due Process Clause must be 'meaningful,' and 'appropriate to the

nature of the case.'"  *Bell v. Burson*, 402 U.S. 535, 542 (1971) (citations omitted).  The outcome

must reflect "consideration of an element essential to the decision."  *Id*.  Due process, however,

"is a flexible concept that varies with the particular situation."  *Zinermon v. Burch*, 494 U.S. 113,

127 (1990).

The plaintiff admits that she received "actual notice" of the impoundment and pending

sale of her car in late May 2002 and "immediately requested a hearing[.]"[5]  Pl.'s Opp'n at 9.  The

plaintiff appeared for a hearing on May 29, 2002, at the District's Traffic and Adjudication

---

[5]  The defendant surmises that the plaintiff "would have been informed of [the auction] date when she visited the Lot" on April 19, 2002, but it has not provided any documentation of such notice.  Jones Decl. ¶ 9.  The plaintiff disputes that she was so informed.  Pl.'s Opp'n at 9. While arguably the plaintiff's own exhibit indicating that the car was subject to auction, Pl.'s Ex. C to First Set of Requests for Admissions [Dkt. No. 73-2], suggests perhaps inquiry notice, this disputed fact is a credibility question beyond the province of summary judgment.

Division, for a ticket purportedly issued on November 19, 2001.  Claytor Decl. ¶ 12; Am. Compl.

¶ 14.  But the plaintiff asserts that the "the primary reason for the May 29, 2002 hearing," was "to

stop the sale of her car for at most two [] outstanding parking tickets plus fees."  Pl.'s Opp'n at

10.  Although the November 19, 2001 ticket was dismissed because it had not been timely

recorded, Claytor Decl. ¶ 12; Am. Compl. ¶ 14, the hearing examiner determined that the

plaintiff had two unresolved tickets.  Def.'s Mot. for Summ. J., Ex. I.  The hearing examiner

therefore upheld the boot, tow and storage fees and the transfer of the car to the Blue Plains

abandoned car lot because the plaintiff had not claimed the car within 15 days after it was towed

to the impoundment lot on Addison Road.  *Id*., Ex. J.

    The plaintiff's due process claim is premised on her allegation that "she was informed

[that] she had until June 7, 2002, to pick up the car."  Am. Compl. at 16; Pl.'s Opp'n at 9.  The

plaintiff has not substantiated her claim beyond her own recollection but even if true, the alleged

misrepresentation does not rise to the level of a constitutional violation because the undisputed

evidence shows that prior to the sale of the car on June 4, 2002, the plaintiff received procedural

due process on three separate occasions during the more than two months that the car sat at the

impoundment lot.  *See Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 650 (D.C. Cir. 1987)

(declining to "'federalize'- indeed, 'constitutionalize'- every deviation from state procedures").

Even if the car was sold in less than the statutory requirement of 45 days after receipt of proper

notice, *see supra* nn.3, 5, violations of "state procedural requirements must be enforced in state

courts under state law."  *Brandon*, 823 F.2d at 650 (D.C. Cir. 1987) (citations omitted).  The

defendant is entitled to judgment on the due process claim.

**F.  The Plaintiff Has Conceded the Defendant's Arguments Against the Common Law Claims**

By Order of April 25, 2008 [Dkt. No. 72], the court advised the plaintiff about responding to the defendant's dispositive motion and the possible consequence of dismissal if she did not. The plaintiff has not addressed in her opposition brief the defendant's valid arguments against her common law claims, *see* Def.'s Mem. of P. & A. at 24-33, and therefore has conceded them. *See Cureton v. U.S. Marshal Serv.*, 322 F. Supp. 2d 23, 27 (D.D.C. 2004) (Urbina, J.) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the case.") (citations omitted); *M.K. v. Tenet*, 99 F. Supp. 2d 12, 28 & n.24 (D.D.C. 2000) (Urbina, J.) (treating defendants' unopposed argument as conceded and dismissing the applicable claims under Local Civil Rule 7.1(b) (now LCvR 7(b)).  *See also In re Miller*, 2004 WL 963819, at *1 (D.C. Cir. May 4, 2004) (In managing its docket, "the court may choose to . . . resolve the motion for summary judgment on the merits without an opposition . . .  or [] treat summary judgment as conceded.").

**IV.  CONCLUSION**

For the foregoing reasons, the court determines that no triable issue is presented on the plaintiff's claims and concludes that the defendant is entitled to judgment as a matter of law.  An order consistent with this memorandum opinion is separately and contemporaneously issued this 27th day of February 2009.

RICARDO M. URBINA
United States District Judge

10